UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Benson Power, LLC, | Case No. 19-cv-1113 (WMW/DTS) |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |
| North American Fertilizer, LLC, | |
| Defendant. | |

---

In this contract dispute, Defendant North American Fertilizer, LLC (NAF) moves to dismiss Plaintiff Benson Power, LLC's (Benson Power) amended complaint. (Dkt. 14.) For the reasons addressed below, NAF's motion to dismiss is granted.

## BACKGROUND

In or about 2006, Fibrominn LLC constructed a facility in Benson, Minnesota, for the purpose of burning biomass (the Facility). Fibrominn and NAF executed an Ash Sale Agreement in November 2006 (2006 Agreement), whereby Fibrominn agreed to sell to NAF the ash byproduct generated by the Facility. The Facility subsequently became subject to a receivership, and Benson Power purchased the Facility and related assets in 2015. Benson Power continued to sell ash byproduct to NAF pursuant to the 2006 Agreement.

In addition to selling ash byproduct to NAF, Benson Power sold power from the Facility to Northern States Power Company (NSP). Between late 2015 and early 2017, Benson Power negotiated a potential sale of the Facility to NSP. These negotiations were

subject to a confidentiality agreement that prohibited Benson Power from disclosing information about the potential sale. In February 2017, Benson Power and NSP executed an Asset Purchase and Sale Agreement, whereby Benson Power agreed to sell the Facility and related assets to NSP (Asset Sale). The agreement between Benson Power and NSP included multiple contingencies that had to be met before the Asset Sale could occur, including certain regulatory approvals from governmental authorities.

Meanwhile, Benson Power and NAF negotiated potential amendments to the 2006 Agreement and executed an Amended and Restated Ash Sale Agreement in March 2017 (2017 Agreement). The 2017 Agreement includes a dispute-resolution provision that requires negotiation, mediation, and arbitration of "[a]ny dispute arising out of or relating to this Agreement, including the alleged breach, termination, validity, interpretation and performance thereof." The 2017 Agreement also provides that "issues related to the scope of applicability of this Agreement to arbitrate shall be submitted to binding arbitration."

Approximately one month after executing the 2017 Agreement, NAF became aware of Benson Power's potential sale of the Facility and related assets to NSP. Around this time, Benson Power and NSP entered a letter agreement waiving certain confidentiality obligations, thereby permitting Benson Power to disclose certain details of the Asset Sale negotiations to NAF. Among other things, Benson Power disclosed to NAF that NSP likely would close on the Asset Sale in early 2018 after obtaining certain regulatory approvals and that NSP intended to shut down the Facility in 2018.

NAF's president signed a consent agreement (Consent Agreement) in September 2017, whereby NAF agreed to Benson Power's assignment of the 2017 Agreement to NSP

2

"upon the [c]losing" of the Asset Sale. NAF acknowledges in the Consent Agreement that the terms of the 2017 Agreement will remain unchanged after the assignment to NSP. The Consent Agreement also provides that, after the Asset Sale closes, Benson Power will be released from all obligations under the 2017 Agreement "arising from and after" the closing of the Asset Sale, "excluding liabilities arising from any breach or nonperformance by Benson [Power] under the [2017 Agreement] occurring prior to" the Asset Sale.

In June 2018, after all contingencies had been fulfilled, Benson Power and NSP closed on the Asset Sale. As a result, NSP assumed Benson Power's obligations under the 2017 Agreement. Shortly thereafter, NSP notified NAF via letter of NSP's election to terminate the 2017 Agreement.

In January 2019, NAF provided Benson Power a "Notice of Dispute" pursuant to the dispute-resolution provision of the 2017 Agreement. NAF claimed that Benson Power fraudulently induced NAF to enter into the 2017 Agreement by concealing material facts about Benson Power's negotiations with NSP. NAF subsequently delivered a Notice of Mediation to Benson Power's counsel alleging common-law fraud and seeking damages.

Benson Power commenced this action against NAF in April 2019 and filed an amended complaint in June 2019. Benson Power seeks a judgment declaring, among other things, that NAF consented to the assignment of the 2017 Agreement to NSP, Benson Power is not required to arbitrate NAF's claims, and Benson Power is not liable to NAF for fraud or any other wrongful act alleged by NAF. NAF moves to dismiss the amended complaint, arguing that the 2017 Agreement requires mediation and arbitration of NAF's

3

claims against Benson Power notwithstanding Benson Power's assignment of the 2017 Agreement to NSP.[1]

## ANALYSIS

NAF moves to dismiss the amended complaint for failure to state a claim on which relief can be granted, Fed. R. Civ. P. 12(b)(6), arguing that the 2017 Agreement requires arbitration of the underlying issues, including disputes pertaining to the scope of the applicability of the arbitration provision. Benson Power counters that it is no longer bound by the arbitration provision in the 2017 Agreement.

Because an arbitration agreement precludes a court "from granting judicial relief on any issue within the scope of the applicable arbitration clause," courts evaluate the applicability of an arbitration agreement under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted. *Minn. Supply Co. v. Mitsubishi Caterpillar Forklift Am. Inc.*, 822 F. Supp. 2d 896, 905 n.10 (D. Minn. 2011); *accord City of Benkelman, Neb. v. Baseline Eng'g Corp.*, 867 F.3d 875, 881-82 (8th Cir. 2017). If a complaint fails to state a claim on which relief can be granted, dismissal is warranted. *See* Fed. R. Civ. P. 12(b)(6). When determining whether a complaint states a facially plausible claim, a district court accepts the factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Blankenship v. USA Truck, Inc.*, 601 F.3d

---

[1] NAF filed its motion to dismiss approximately 11 hours after its deadline to do so had passed and promptly moved for a one-day extension on the grounds of excusable neglect. (Dkt. 18.) At the hearing on the motion, Benson Power expressly did not oppose NAF's motion for an extension. Because NAF has established that its delay was the result of excusable neglect, the Court finds that good cause exists to grant NAF's unopposed motion for a one-day extension. *See* Fed. R. Civ. P. 6(b)(1)(B).

852, 853 (8th Cir. 2010). Factual allegations must be sufficient to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Legal conclusions couched as factual allegations may be disregarded. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 *et seq.*, requires courts to enforce written agreements to arbitrate disputes and reflects a "liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "[C]ontract provisions directing arbitration shall be enforceable in all but limited circumstances." *Kelly v. Golden*, 352 F.3d 344, 349 (8th Cir. 2003). In addition, contracting parties may include a "delegation provision" by which they agree to have an arbitrator decide threshold questions of arbitrability, such as the validity or scope of the arbitration agreement. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010); *Shockley v. PrimeLending*, 929 F.3d 1012, 1018 (8th Cir. 2019). A delegation provision is "a severable and presumably valid provision of a contract" that must be enforced unless "specifically challenged." *Shockley*, 929 F.3d at 1018; *accord Rent-A-Center*, 561 U.S. at 72.

Benson Power first disputes that the 2017 Agreement has a delegation provision because the 2017 Agreement does "not state that the question of whether a valid agreement to arbitrate exists is subject to arbitration." Threshold questions of arbitrability are presumptively decided by courts unless the parties' contract "clearly and unmistakably" provides that such issues are delegated to the arbitrator. *Catamaran Corp. v. Towncrest Pharm.*, 864 F.3d 966, 970 (8th Cir. 2017) (internal quotation marks omitted). Here, the

2017 Agreement provides that "[a]ny dispute arising out of or relating to this Agreement, including the alleged breach, termination, validity, interpretation, and performance thereof," must be resolved through certain procedures—including arbitration—that are described in the 2017 Agreement. The 2017 Agreement also provides that any dispute that is not resolved through negotiation or mediation, "including issues related to the scope of the applicability of this Agreement to arbitrate[,] shall be submitted to binding arbitration under the authority of the Federal Arbitration Act."

Benson Power provides no plausible explanation as to why the foregoing language fails to delegate questions of arbitrability to the arbitrator, and the Court discerns none. The 2017 Agreement clearly and unmistakably delegates to the arbitrator all disputes that pertain to the "validity" of the agreement as a whole and "the scope of the applicability" of the arbitration provision in particular. *See, e.g.*, *Rent-A-Center*, 561 U.S. at 66, 68-69 (holding that agreement to arbitrate "any dispute relating to the interpretation, applicability, enforceability or formation of this [arbitration] Agreement" was a presumptively valid delegation provision); *Wotten v. Fisher Invs., Inc.*, 688 F.3d 487, 493-94 (8th Cir. 2012) (holding that an agreement to arbitrate disputes involving "the scope and applicability of the [parties'] agreement to arbitrate" was "a clear and unmistakable expression of the parties' intent to leave the question of arbitrability to an arbitrator" (internal quotation marks omitted)). Because the 2017 Agreement contains a presumptively valid delegation provision, judicial relief as to threshold issues of arbitrability is presumptively precluded.

Benson Power nonetheless contends that the delegation provision is inapplicable here because Benson Power is no longer a party to the 2017 Agreement. A delegation

6

provision is "presumably valid" and generally must be enforced. *Shockley*, 929 F.3d at 1018; *accord Rent-A-Center*, 561 U.S. at 72. But because a delegation provision is severable from the rest of the contract, the validity or applicability of the delegation provision may be determined by a court if the provision is "specifically challenged." *Shockley*, 929 F.3d at 1018; *accord Rent-A-Center*, 561 U.S. at 72. Benson Power does not specifically challenge the delegation provision on the grounds that it was improperly formed or otherwise invalid from its inception, however. Therefore, Benson Power's reliance on *Shockley* is misplaced. *See* 929 F.3d at 1019 (concluding that "no contract was formed as to the delegation provision" and, therefore, the delegation provision was invalid). Benson Power specifically challenges only whether the delegation provision *continues to apply* to Benson Power in light of its assignment of the entire 2017 Agreement, including the delegation provision, to NSP. This Court's role, therefore, is limited to determining whether Benson Power remains bound by the delegation provision.

Relying on *In re Wholesale Grocery Products Antitrust Litigation* (*In re Wholesale*), Benson Power argues that its assignment of the 2017 Agreement to NSP relieves it of all contractual obligations to arbitrate disputes, including threshold arbitrability disputes, notwithstanding the language in the 2017 Agreement. 850 F.3d 344 (8th Cir. 2017). In *In re Wholesale*, two wholesale grocery suppliers entered into an asset exchange agreement whereby they assigned to each other certain supply agreements and arbitration agreements they had with their respective retail customers. *Id.* at 347. When the retailers subsequently sued the wholesalers for alleged antitrust conspiracy, the wholesalers moved to dismiss, relying on the arbitration agreements. *Id.* The United States Court of Appeals for the

7

Eighth Circuit held that the wholesalers could not enforce the arbitration agreements to which they were no longer signatories, in light of the assignment of those agreements as part of the asset exchange. *Id.* at 350-51. The wholesalers could not invoke the arbitration agreements because the wholesalers had "expressly agreed to convey, assign, transfer and deliver to each other all of their right, title and interest in the underlying supply and arbitration agreements." *Id.* at 349 (internal quotation marks omitted). Had the wholesalers wished to retain the right to compel arbitration with respect to any pre-assignment liabilities, the Eighth Circuit reasoned, "the wholesalers should have bargained not to transfer the corresponding rights to compel arbitration on disputes regarding those pre-assignment liabilities." *Id.* at 350.

The *In re Wholesale* decision is inapposite to the facts and circumstances here. The Asset Sale agreement between Benson Power and NSP is not in the record. But the Consent Agreement between Benson Power and NAF provides:

> NSP will assume and agree to be bound by and to perform and comply with the obligations of Benson under the [2017 Agreement] ***arising from and after the Closing*** [of the Asset Sale], excluding liability arising from any breach or nonperformance by Benson under the [2017 Agreement] ***occurring prior to the Closing*** [of the Asset Sale].

(Emphasis added.) The facts here are distinguishable from the facts in *In re Wholesale* in at least two material ways. First, the wholesalers in *In re Wholesale* attempted to invoke arbitration agreements to which they were no longer signatories. By contrast, here NAF remains a signatory to the 2017 Agreement and has *not* assigned its rights under the

8

arbitration and delegation provisions of that agreement.[2]  Second, unlike the wholesalers in *In re Wholesale*, which had assigned all of their contractual rights and obligations, Benson Power did not assign to NSP all of Benson Power's contractual responsibilities under the 2017 Agreement.  Instead, Benson Power assigned to NSP *only* Benson Power's obligations arising *after* the Asset Sale closing.  NAF's claims against Benson Power undisputedly arose before the Asset Sale closing and, therefore, involve pre-assignment contractual obligations and liabilities that expressly were not assigned to NSP.  For these reasons, the holding in *In re Wholesale* is inapposite.

Benson Power does not dispute that it assigned to NSP only its obligations under the 2017 Agreement that arose *after* the Asset Sale closing.  Nor does Benson Power dispute that it did *not* assign to NSP its obligations or liabilities that arose *before* the Asset Sale closing.  Benson Power appears to contend that any of its contractual responsibilities that were not assigned to NSP were extinguished as a result of the assignment.  Benson Power cites no legal authority that supports this argument, however.[3]

---

[2]  Benson Power contends that this distinction is immaterial, relying on a decision from the District Court of the Virgin Islands that the Eighth Circuit cited in a footnote in *In re Wholesale*.  *See* 850 F.3d at 350 n.4 (citing *RRCI Constructors, LLC v. Charlie's/Diamond Ready Mix, Inc.*, 51 V.I. 645 (D.V.I. Mar. 24, 2009)).  But nothing in the Eighth Circuit's decision indicates that its holding is as broad as Benson Power suggests or that the Eighth Circuit intended to fully adopt the reasoning of the *RRCI* decision, which pertained to circumstances that were distinct from the circumstances of *In re Wholesale*.  Without more, this Court declines to construe the Eighth Circuit's brief citation to a district court decision as an implicit endorsement of every aspect of that district court decision.

[3]  Benson Power relies solely on *In re Wholesale*, which is inapposite for the reasons addressed above.  Notably, contrary to Benson Power's argument, the *In re Wholesale* decision recognizes that the assignor of a contract may choose *not* to transfer its rights and obligations as they pertain to pre-assignment liabilities.  *See* 850 F.3d at 350.  As addressed

Contrary to Benson Power's position, a "mere assignment does not absolve the [assignor's] obligations under a contract." *Vetter v. Sec. Cont'l Ins. Co.*, 567 N.W.2d 516, 521 (Minn. 1997) (quoting *Tony & Leo, Inc. v. U.S. Fid. & Guar. Co.*, 281 N.W.2d 862, 865 (Minn. 1979)). The assignor must obtain the agreement of the other party to the contract "to release the [assignor] from its responsibilities under the contract." *Id.* To prove that it has been discharged from its contractual responsibilities, obligations, or liabilities, the assignor must demonstrate "a clearly defined expression of consent" from the other party to the contract. *Id.* (quoting *Tony & Leo*, 281 N.W.2d at 865). Here, the only evidence in the record that pertains to NAF's consent to the assignment of the 2017 Agreement is the Consent Agreement that Benson Power drafted and NAF's president signed. The Consent Agreement says nothing about releasing Benson Power from any of its pre-assignment contractual responsibilities, obligations, or liabilities, and the Consent Agreement expressly transfers to NSP only post-assignment contractual obligations. Benson Power has not established that the assignment of the 2017 Agreement to NSP released Benson Power from its pre-assignment contractual obligations, including the obligation to arbitrate disputes about "the scope of the applicability" of the arbitration provision as to alleged pre-assignment liabilities.

For these reasons, Benson Power fails to state a claim on which relief can be granted, and NAF's motion to dismiss is granted.

---

in this Court's analysis, Benson Power has not demonstrated that its assignment of the 2017 Agreement transferred Benson Power's pre-assignment contractual obligations to NSP.

**ORDER**

Based on the foregoing analysis and all of the files, records and proceedings herein,

**IT IS HEREBY ORDERED** that Defendant North American Fertilizer, LLC's motion to dismiss and motion for an extension of time, (Dkts. 14, 18), are **GRANTED**. This case is **DISMISSED**.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: January 14, 2020
s/Wilhelmina M. Wright
Wilhelmina M. Wright
United States District Judge